IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KATHY JEFFREY, ET. AL., | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:20-cv-00715 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| ALLSTATE INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Pending before the Court is Defendant Allstate Indemnity Company's Motion to Dismiss. (Doc. No. 21, "Motion"). Via the Motion, Defendant seeks dismissal of Count Two (and only Count Two) of Plaintiff's First Amended Complaint ("Amended Complaint"),[1] which asserts that Defendant is liable pursuant to the Tenn. Code Ann. § 56-7-105 based on its alleged bad-faith refusal to pay on Plaintiff's insurance claim. Plaintiff has responded. (Doc. No. 23, "Response"). Defendant replied to Plaintiff's Response. (Doc. No. 25, "Reply"). The matter is ripe for review.

For the reasons discussed below, the Court will grant Defendant's Motion.

---

[1] The Motion thus is actually a motion to dismiss *in part,* which is sometimes called (though incorrectly, as a matter of syntax) a "partial" motion to dismiss.

1

# BACKGROUND[2]

Plaintiff owns real property, including a dwelling thereon ("dwelling"), located at 5165 Benders Ferry, Mt. Juliet, Tennessee 37122. (Doc. No. 18 at ¶¶ 1, 3, "Property"). Defendant is an insurance company from which Plaintiff purchased an insurance policy to cover the Property. (*Id*. at ¶¶ 2, 7, "Policy"). The Policy covered the Property from June 29, 2019 through June 29, 2020. (*Id*. at ¶ 7). During the coverage period (on or about September 9, 2019), Plaintiff discovered fire damage to the Property and provided Defendant with notice of the damage by submitting a claim. (*Id*. at ¶¶ 8-9, "Claim"). Allstate denied the Claim on July 2, 2020 because "the fire damage to the Property was excluded by the Policy's exclusion of physical loss caused by 'fire resulting from vandalism.'" (*Id*. at ¶¶ 11-12). Upon receipt of the denial, Plaintiff sent Defendant a letter ("initial demand letter") asserting that its denial was inappropriate and violated Tenn. Code Ann. § 56-7-105. (*Id*. at ¶ 13). Plaintiff's initial demand letter asserted that the fire was caused by arson, that

---

[2] The facts in this section are taken from Plaintiff's Amended Complaint (Doc. No. 18) and the attachments thereto (Doc. Nos. 18-1, 18-2, 18-3, and 18-4) are accepted as true for purposes of the Motion. The Amended Complaint is the operative complaint in this matter. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). To the extent that allegations referred to below are legal conclusions or bare conclusory allegations, however, they are not accepted as true but rather are identified herein as merely what Plaintiff claims, and not what the Court is accepting as true for purposes of the Motion.

Notably, although the caption to the Amended Complaint identifies the plaintiff as Kathy Jeffrey as attorney in fact for Mark Jeffrey, the Amended Complaint calls Mark Jeffrey "Plaintiff." (Doc. No. 18 at ¶ 1). For this reason, although Defendant refers to "Plaintiffs" (plural), the Court herein uses the term "Plaintiff" (singular) and does so in reference to Mark Jeffrey rather than Kathy Jeffrey.

While the Court appreciates concision in parties' briefing and commends counsel for evidently being respectful of the Court's time and for not feeling compelled to lengthy briefs for lengths' sake, the parties here have sacrificed brevity for thoroughness. Both parties failed to set forth the applicable legal principles governing issues like the present one (involving the proper interpretation of an insurance contract) and to thoroughly address the dispositive issues as explained more fully in the Discussion section below.

the loss was not caused by fire resulting from vandalism and therefore be covered under the policy. (*Id*. at ¶ 14). Defendant thereafter reaffirmed its denial of Plaintiff's demand. (*Id*. at ¶ 15).

Plaintiff filed his Amended Complaint on November 11, 2020, alleging (1) in Count One that Defendant breached its contract with him by failing to provide payment for the loss from the fire, and (2) in Count Two that Defendant's refusal to pay was in bad faith.[3] (*Id*. at ¶¶ 19-26). Accordingly, Plaintiff seeks damages including cost to repair the damage to the Property and consequential damages resulting from continuing and ongoing Property damage. (*Id*. at ¶ 28).

## **LEGAL STANDARDS**

As suggested above, Defendant does not seek dismissal of Plaintiff's claim that Defendant breached the parties' contract, *i.e.*, insurance contract, by refusing to provide coverage. Rather, Defendant seeks only the dismissal of Count Two, which alleges that Defendant's (alleged) breach—the refusal to provide coverage—was in bad faith. As noted below, the first element of Count Two requires Plaintiff to show that Defendant was in breach of the policy—*i.e.*, that coverage was due to Plaintiff—and the fourth element requires Plaintiff to show that Defendant's position that coverage was not due—even if erroneous—at least rested on legitimate and substantial grounds. This means, in the context of the instant Motion, that the Court needs to determine whether Plaintiff has plausibly alleged not only that the policy (as correctly construed) provided Plaintiff coverage, but also that Defendant's contrary construction of the policy did not rest on legitimate and substantial grounds. And so the Court begins with a discussion of applicable

---

[3] Defendant's Response opines, "this is merely a disagreement regarding coverage." Doc. No. 25 at 2. Although this case clearly involves a disagreement about coverage, the Court in resolving the instant Motion cannot and does not accept at face value Defendant's assertion that this is *merely* a disagreement about coverage, which in the view of the Court suggests a good-faith disagreement about coverage. Instead, the Court must determine for itself whether Plaintiff has adequately alleged that this case involves something more than Defendant's good faith disagreement with Plaintiff's view that coverage exists.

principles governing the construction of insurance policies, before turning to the question of whether Plaintiff has alleged facts plausibly suggesting entitlement to relief on Count Two.

A. Construction of Insurance Policies, Generally

"Under Tennessee law, insurance policies—absent a choice-of-law clause—are governed by the substantive law of the state where the policy was issued and delivered." *Am. Guarantee and Liab. Ins. Co. v. Norfolk Southern Ry. Co.*, 278 F.Supp.3d 1025, 1036 (E.D. Tenn. 2017). The Policy does not include a choice-of-law clause and was issued in Tennessee, Doc. No. 18-1, and therefore Tennessee substantive law applies.

"'The question of the extent of insurance coverage is a question of law involving the interpretation of contractual language.'" *Cornerstone Church of Nashville, Inc. v. Guideone Ins.*, No. 3:20-CV-00956, 2021 WL 1530925, at *4 (M.D. Tenn. Apr. 19, 2021) (quoting *Clark v. Sputniks*, LLC, 368 S.W.3d 431, 441 (Tenn. 2012)).

A sister district court has cogently summarized Tennessee law regarding the construction of insurance policies:

> The general rules of contract construction apply to insurance contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). Insurance policies should be read "as a whole in a reasonable and logical manner." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998). Policy language is given its usual and ordinary meaning. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). If a policy provision can be interpreted in more than one way, it is ambiguous. *Id.* Because insurance policies are contracts of adhesion, ambiguous terms that limit coverage are construed against the insurer in favor of the insured. *Harrell v. Minnesota Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996) ("[A]n insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy."). However, courts should be careful not to create ambiguities where none exist. *Setters v. Permanent Gen. Assur. Corp.*, 937 S.W.2d 950, 954 (Tenn. Ct. App. 1996). Unambiguous language is given its explicit effect without "favoring of either party in [its] construction." *Id.* Further, a policy exclusion will be upheld so long as it "merely limits coverage and does not totally emasculate a previously stated coverage." *Id.* When resolving coverage disputes, an insured carries the burden of showing their claim fits within the insurance policy, and if insured makes such a

showing, the burden shifts to an insurer to establish a policy exclusion bars coverage. *Blaine Const. Corp. v. Ins. Co. of N. Am.*, 171 F.3d 343, 349 (6th Cir. 1999) (applying Tennessee law).

*Am. Guarantee and Liab. Ins. Co.*, 278 F.Supp.3d at 1037-38. Regarding exclusion and limitations of coverage in particular, policies "'must be construed against the insurance company and in favor of the insured.'" *Cornerstone Church of Nashville*, 2021 WL 1530925, at *4 (quoting *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991)). "These clauses should not, however, 'be so narrowly construed as to defeat their evident purpose.'" *Id.* (quoting *Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 439 (6th Cir. 2001) (citation omitted)).

B. <u>Bad Faith Refusal to Pay</u>

Tenn. Code Ann. § 56-7-105(a) sets forth the statutory basis for Plaintiff's claim in Count Two, providing that:

> [t]he insurance companies of this state, . . . in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy [] on which the loss occurred, shall be liable to pay the holder of the policy [], in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

Tenn. Code Ann. § 56-7-105(a).

In order to prevail on a § 56-7-105 bad faith claim, a plaintiff must prove four elements:

> (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.

*Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 360–61 (6th Cir. 2018) (citing *Palmer v. Nationwide Mut. Fire Ins. Co.,* 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)).

5

> A bad faith claim for a refusal to pay cannot be sustained when the insurer's refusal to pay rests on legitimate and substantial legal grounds. An investigation can be a legitimate ground for refusal. Ordinary care and diligence in the investigation require that the insurer investigate the claim to such an extent that it can render honest judgment regarding whether the claim should be settled. The insurer's reliance on the investigation should also be reasonable. [A]n insurer's mistaken judgment is not bad faith if it was made honestly and followed an investigation performed with ordinary care and diligence. Mere negligence is not sufficient to impose liability for failure to settle. The question of an insurance company's bad faith is for the jury if from all of the evidence it appears that there is a reasonable basis for disagreement among reasonable minds as to the bad faith of the insurance company in the handling of the claim.

*Nylander v. Unum Life Ins. Co. of Am.*, 309 F. Supp. 3d 526, 544 (M.D. Tenn. 2018) (internal citations and quotations omitted).

C. <u>Motion to Dismiss</u>

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as

mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 ("Rule 8") and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## THE PARTIES' RESPECTIVE POSITIONS

Via the Motion, Defendant requests dismissal of Count Two of Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) on the ground that Plaintiff's bad faith claim failed to meet the *Twombly/Iqbal* standard. (Doc. No. 21). Regarding why dismissal is appropriate, Defendant is not as express or thorough as it might have been regarding why this is the case, but Defendant's

position essentially is that Defendant's denial of coverage—whether or not ultimately correct—is the result of a good-faith disagreement with Plaintiff regarding whether coverage was excluded under the policy, and that nothing about Plaintiff's investigation supports any claim of bad faith.

Plaintiff responds essentially that the existence (or lack thereof) of bad faith is a matter for the jury to decide. Plaintiff also asserts (with no analysis whatsoever, particular as to the crucial fourth element of this cause of action) that the allegations of Count Two are sufficient under the applicable pleading standards of *Twombly*. Plaintiff also asserts, on a point of no relevance to this (federal) action, that the allegations of the Amended Complaint "meet[] the bad faith pleading standards set forth by the courts in Tennessee." (Doc. No. 24 at 3).

## **DISCUSSION**

Defendant's initial denial letter to Plaintiff asserted, for reasons discussed below, that based on its investigation, the loss to Plaintiff's Property "does not come within the terms and conditions of the [P]olicy."[4] Doc. No. 18-2 at 1. The relevant Policy provisions—all of which were quoted in

---

[4] Defendant's July 2, 2020 letter to Plaintiff explains that Defendant's "investigation [] revealed that the fire was the result of arson, perpetrated by two juveniles after the property had been vacant or unoccupied for more than 90 consecutive days prior to the fire resulting from the vandalism of the juveniles." Doc. No. 18-2 at 1.

Due to Defendant's clear admission that the fire was the result of arson, the Court does not understand why Plaintiff spent so much time in its subsequent demand letter to hammer home that the fire was the result of arson. (Doc. No. 18-3). And in any event, the focus on whether the fire was arson is misguided; as discussed below, the legitimacy of defendant's denial of coverage turns on the *applicability* of the exclusion (for losses caused by vandalism) set forth in Paragraph 18 of Section I of the Policy and on the *inapplicability* of the exception (for certain losses resulting from fire caused by vandalism) to such exclusion based on the 90-day vacancy period—and neither of these matters turns on whether the fire was the result of arson. The irrelevance of whether the conduct at issue is properly classified as arson is borne out by the fact that the Policy does not even use the term "arson" anywhere.

In addition, the Court notes that any suggested dichotomy between "vandalism" (as defined by the Policy) and arson is a false dichotomy, as act can constitute both arson and vandalism as thus defined, *i.e.*, "willful or malicious conduct resulting in damage or destruction of property."

8

the denial letter—are found, respectively, in Paragraph 12 of the Policy's "General" provision and several provisions (including Paragraph 18) of Section I of the policy. Specifically, the relevant content of the "General" provisions reads as follows:

**GENERAL**

*Definitions Used in This Policy*

. . .

12. **Vandalism** – means willful or malicious conduct resulting in damage or destruction of property. **Vandalism** does not include theft of property.

And the relevant content from Section I reads as follows:

*Losses We Cover Under Coverages A and B:*
**We** will cover sudden and accidental direct physical loss to property described in **Coverage A – Dwelling Protection** and **Coverage B – Other Structures Protection** except as limited or excluded in this policy.

*Losses We Do Not Cover Under Coverages A and B:*

A. **We** do not cover loss to the property described in **Coverage A – Dwelling Protection** or **Coverage B – Other Structures Protection** consisting of or caused by:

. . .

18. **Vandalism**. However, **we** do cover sudden and accidental direct physical loss caused by fire resulting from **vandalism** unless **your dwelling** has been vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

9

Doc. No. 18-1 at 18-19, 25. The Court believes that Paragraph 18 unambiguously does the following: (a) prescribes any exclusion to coverage for loss to a dwelling caused by vandalism;[5] (b) carves out an exception to such exclusion for losses caused more specifically by *fire resulting from* vandalism; but (c) makes such exception to the exclusion inapplicable in the event of a 90-day vacancy. Notably, contrary to paragraph 12 of the Amended Complaint, the Policy (including Paragraph 18 in particular) does *not* prescribe an exclusion of "loss caused by 'fire resulting from vandalism'" (Doc. No. 18 at ¶12). Instead, Paragraph 18 states that loss caused by fire resulting from vandalism is generally *excepted* from the exclusion, that is, *not* excluded.

Based on these provisions, Defendant's initial denial letter, though not as clear as it might have been, apparently presents the following rationale for the denial of coverage: (a) the loss to the dwelling resulted from "vandalism"; (b) such loss was caused, more specifically, by fire resulting from vandalism; (c) but the Property had been vacant and unoccupied for more than 90 consecutive days prior to the vandalism that caused the fire;[6] and ergo (d) under Paragraph 18, coverage for Plaintiff is excluded.

In other words, the initial denial letter implied that: (a) Paragraph 18 set forth a general exclusion (of loss from vandalism), which was factually applicable here based on Defendant's

---

[5] At first glance, the reader might not grasp that Paragraph 18 primarily prescribes a general exclusion for loss caused by vandalism. The reader might instead perceive the bolded word "Vandalism" to be a mere paragraph caption that simply tells the reader that what follows in the paragraph will relate to the topic of vandalism. But on second glance, one can see that "Vandalism" is bolded not because it is a paragraph caption, but rather because it is term defined elsewhere in the Policy. And one also can see that "Vandalism" here serves not as a mere paragraph caption, but rather to completes a sentence that prescribes an exclusion: "We do not cover loss [for which coverage otherwise exists] consisting of or caused by: [among other things] Vandalism."

[6] Herein, the Court will use the term "90-day vacancy" as shorthand for the building remaining vacant and unoccupied for more than 90 consecutive days prior to the vandalism that caused the fire.

investigation of Plaintiff's claim; (b) the general exclusion was subject to a general exception (to the exclusion) for loss from fire resulting from vandalism, which was factually applicable here based on Defendant's investigation; but (c) the exception to the exclusion was inapplicable in the event of a 90-day vacancy, which existed in this case based on Defendant's investigation; meaning (d) that the exclusion was applicable (and not negated by the exception) and precluded coverage for Plaintiff. Again, the initial denial letter did not spell this out as intelligibly as it might have. But the Court believes that one need not have any particular genius in reading insurance policies, or letters from insurance companies, to glean all of this; this all can be gleaned by paying attention to the gist of the initial denial letter and the particular language of the policy provisions it quotes.

In other words, the letter asserts that the reason there is no coverage for Plaintiff's loss is that coverage is excluded, and not because the loss does not fall within any coverage clause.[7] And, according to the letter, the specific applicable exclusion is Paragraph 18's exclusion for loss caused by vandalism, and exception to the exclusion under Paragraph 18 is inapplicable in this case because of the 90-day vacancy. Setting aside for the moment whether Defendant's investigation supports the facts embedded in such reasoning, the Court can find nothing otherwise wrong with

---

[7] It is axiomatic that an insurer can argue that a loss is not within the scope of coverage because it does not fall within a coverage clause, because it falls within the scope of an exclusion, or both. *See*, *e.g.*, *Mid Continent Cas. Co. v. King*, No. 1:06-CV-00128-MP-GRJ, 2012 WL 4510857, at *8 (N.D. Fla. Jan. 12, 2012) (noting that "the insurer [can] argue[ ] that the claim [either] is not covered by the policy or is excluded by the policy"), *report and recommendation adopted*, No. 1:06-CV-00128-MP-GRJ, 2012 WL 4510956 (N.D. Fla. Oct. 1, 2012). Conceivably, Defendant here could have asserted (alternatively) that Plaintiff's loss was not presumptively *covered* (under Paragraph 18 or any other provision of the Policy) to begin with, such that the question of *exclusion* not need even be reached. But Defendant's makes no such assertion. Instead, Defendant expressly frames the issue in this case as "whether the Plaintiffs' claim for coverage is excluded under the policy or not." (Doc. No. 25 at 1).

this reasoning (though ideally it would have been set forth more clearly).[8] And the Amended Complaint certainly does nothing to explain what is wrong with it; instead, as noted below, the Amended Complaint misrepresents the letter's rationale for denying coverage.

Crucially, the original denial letter does *not* assert that the loss to the Property was excluded by an exclusion of loss "caused by 'fire resulting from vandalism.'" As indicated above, there is no such exclusion, and Defendant relied not on any such (non-existent) exclusion, but rather on an exclusion for loss caused by *vandalism.* And this fact is devastating to the plausibility of Count Two. As suggested above, Count Two is premised on the assertion that Defendant's refusal to pay did not rest on legitimate and substantial legal grounds. It is hard for the Court to conclude, as required for Count Two to survive the instant motion under Rule 12(b)(6), that the Amended Complaint has plausibly alleged this when it plainly—in light of its attachments, which may be considered on a Rule 12(b)(6) motion to dismiss—misidentifies Defendant's grounds for refusing to provide coverage. That is exactly what the Amended Complaint does, incorrectly accusing Defendant of denying coverage based on its reliance on "the Policy's [actually non-existent] exclusion of physical loss caused by 'fire resulting from vandalism.'" (Doc. No. 18 at ¶ 12). And Plaintiff has done nothing since to attempt to rectify this error.

One can imagine Plaintiff's counsel hypothetically responding to these observations by saying something like, "Admittedly, Paragraph 12 contains an inadvertent misstatement of the reason for defendant's denial, and of course we fully realize—and meant to allege—that Defendant was relying on the exclusion for loss resulting from vandalism." Such a response, aside from being

---

[8] For example, the original denial letter does not misquote any policy provisions, or misconstrue them (as, for example, by treating an exception to an exclusion as if it were an exclusion), or provide an unreasonable application of the policy language to the facts Defendant claims to have found in its investigation.

12

belated, would lack credibility in any event. The record suggests that Plaintiff's counsel has never focused on challenging Defendant's invocation of the exclusion Defendant actually invoked—an exclusion of loss caused by *vandalism,* not an exclusion of loss caused by *fire resulting from vandalism*. In the original demand letter to Plaintiff, Plaintiff's counsel did not dispute that the loss was caused by vandalism.[9] Instead, counsel disputed that the loss was caused by "*fire resulting from* vandalism." (Doc. No. 18-3 at 2). This was a misguided and counter-productive tack to take, because counsel here was (unwittingly) disputing not that there was an *exclusion*, but rather that there was an *exception to* the exclusion; counsel was disputing the existence of the only thing (a fire resulting from vandalism) that potentially could have negated the otherwise-applicable exclusion for loss caused by vandalism.

But as it turns out, even the existence of a fire resulting from vandalism would not have helped Plaintiff, because it would not have resulted in an exception to the exclusion. Such exception to the exclusion, as noted above, is inapplicable in the event of a 90-day vacancy.

In short, it appears that confusion reigned on Plaintiff's side, and that the result was an accusation of a bad-faith denial by Defendant that (as made clear from the Amended Complaint and the attachments thereto) misrepresents the basis for the denial and reflects a fundamental misunderstanding of how Paragraph 18 works. The result is that Plaintiff's allegations of bad faith clearly miss the mark and do not plausibly suggest, as required, the fourth element of the cause of action set forth in Count Two.

---

[9] This would have been hard for Plaintiff to dispute in any event. After all, in his demand letter, Plaintiff was insisting that the juveniles who set the fire acted intentionally and that therefore the fire was the result of arson, which, as Plaintiff specifically noted, is by definition an intentional act (Doc. No. 18-3 at 2). Thus, Plaintiff could hardly have claimed that what the juveniles did was not "vandalism" as defined by the Policy, *i.e.*, "willful and malicious conduct resulting in damage or destruction of property."

Even if Count Two, despite these flaws, conceivably could survive based on allegations of an inadequate, improper or non-existent investigation by Defendant, the allegations of such in the Amended Complaint are insufficient. The Amended Complaint alleges on the one hand that there was no investigation of "the causation of the fire damage," and on the other hand that whatever "investigation" of the loss Defendant did do was improperly "focused on obtaining information unrelated to the causation of the loss from Plaintiff and taking her Examination Under Oath as part of a fishing expedition to find some reason to deny Plaintiff's claim for a covered loss." (Doc. No. 18 at ¶16(b)). But Plaintiff's claim that Defendant did not investigate the causation of the fire damage is belied by Defendant's initial denial letter, which refers to Defendant's investigation and indicates that the cause of the fire indeed was investigated. (Doc. No. 18-2). To be sure, Plaintiff was free to allege in the Amended Complaint factual matter to the effect that—contrary to what Defendant represented in its initial denial letter—there actually was no real investigation into the cause of the fire. But Plaintiff did not do so, and instead relied merely on the conclusory allegation that Plaintiff did no such investigation—a naked allegation that is not plausible considering documentation (the initial denial letter) attached to the Amended Complaint indicating (and not implausibly) that a real investigation was done.

Nor has Plaintiff, in either the Amended Complaint or in responding to the Motion, explained why Defendant's alleged focus was somehow legally improper, resulted in deliberately or negligently false conclusions used to justify the denial of coverage, or otherwise supports the cause of action asserted in Count Two. Finally, Plaintiff has not alleged any factual matter suggesting that Defendant's rationale for denying coverage as set forth in the initial denial letter—which, as noted above, was otherwise sound—incorporated factual conclusions drawn from Defendant's investigation that were wrong or at least unsupported. To the contrary, the Complaint

and its attachments do nothing to refute (or even attempt to refute), the two key factual underpinnings for the denial: (i) that the exclusion for vandalism (as defined by the Policy) applies because the fire causing the loss resulted from the willful and malicious conduct of the juveniles who started the fire; and (ii) the exception to such exclusion is inapplicable because the Property had been vacant or unoccupied for more than 90 consecutive days prior to the vandalism.

For all of these reasons, Plaintiff has alleged no facts concerning Defendant's investigation (or lack thereof), or the conclusions asserted based on Defendant's investigation, that support the cause of action set forth in Count Two.

## **CONCLUSION**

The Court does not purport to say whether Defendant improperly denied Plaintiff coverage, as alleged in Count One, because that question is not before the Court and the Court has not reviewed the evidence relating to the applicability here of the exclusion (and/or exception to the exclusion) for loss caused by vandalism. But for the reasons set forth above, the Court can say that Plaintiff has failed adequately to allege that such denial was made not in good faith, as required for Plaintiff to state a claim on Count Two.

Accordingly, the Court will GRANT Defendant's Motion.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE